IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CASEY DUNNAM, | ) |
| *Plaintiff*, | ) |
| v. | ) Case No. _____ |
| WILSON COUNTY, TENNESSEE and BETSY JAKALSKI, individually, | ) JURY DEMANDED |
| *Defendants*. | ) |

## COMPLAINT

Plaintiff Casey Dunnam ("Plaintiff" or "Mr. Dunnam") alleges the following claims against Defendants Wilson County, Tennessee ("Wilson County") and Betsy Jakalski ("Ms. Jakalski") (collectively, "Defendants"):

1. This is an action for First Amendment retaliation, retaliation in violation of the Public Employees Political Freedom Act, Tenn. Code Ann. § 8-50-603, and retaliation in violation of the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304.

2. Specifically, during Mr. Dunnam's employment with the Wilson County Probation Department, he discovered that Defendant Betsy Jakalski ("Ms. Jakalski"), Wilson County's Director of Probation and Juvenile Services, inaccurately reported the hours she worked. Although Ms. Jakalski frequently arrived at work late, left work early, or never showed up to work at all, she reported working eight hours each day. Furthermore, Ms. Jakalski frequently spent her time in the office talking with her paramour about personal matters (instead of working).

3. After Mr. Dunnam complained about Ms. Jakalski's time theft, Ms. Jakalski said he was not allowed to ask the Probation Department's office manager about her whereabouts.

4. After Mr. Dunnam complained about Ms. Jakalski's time theft, Defendants retaliated against him by: (a) placing him on leave; and (b) terminating him, in violation of his rights under both state law and the First Amendment.

**PARTIES, JURISDICTION, AND VENUE**

5. Plaintiff is a citizen of the State of Tennessee and resides in Wilson County, Tennessee.

6. Defendant Wilson County, Tennessee is a governmental entity.

7. Defendant Betsy Jakalski is the Director of Probation and Juvenile Services for Defendant Wilson County, Tennessee.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this District.

**STATEMENT OF FACTS**

10. Mr. Dunnam began working as a Probation Officer for Wilson County, Tennessee's Probation Department in February 2015.

11. During Mr. Dunnam's employment, he reported directly to Betsy Jakalski ("Ms. Jakalski"), the Director of Probation and Juvenile Services.

12. Mr. Dunnam and Ms. Jakalski both began working for Wilson County at around the same time.

13. The Director of Probation and Juvenile Services is a full-time, salaried position that accrues annual leave and sick leave monthly.

14. Wilson County's Employee Handbook states that: "Any day that an employee does not show up for work at all will be charged as a full day (8 hours) of absence, whether vacation, compensatory, or sick time."

15. Wilson County's Handbook states that employees submitting timesheets "should ensure that the actual hours worked, and any leave time taken are recorded accurately. . . Falsifying these records is a crime under T.C.A. Section 39-16-504."

16. Wilson County's Handbook states that "if [an] employee's concern cannot be resolved with the department head or elected official, the employee may discuss it with Human Resources."

17. Wilson County's Handbook states that if employees observe activity "which is considered to be illegal, improper, or wasteful, please call the State Comptroller's toll-free Fraud, Waste, and Abuse Hotline[.]"

18. Wilson County's Handbook states that questions regarding harassment "should be addressed to the appropriate Department Head/Supervisor, Elected Official or the Director of Human Resources," and that "[n]o retaliatory action will be taken against any employee for informing the Elected Official, Director, or Department Head of any complaint of harassment."

19. Throughout his employment, Mr. Dunnam noticed that Ms. Jakalski frequently arrived at work late, left work early, or simply never showed up to work at all.

20. Other Wilson County employees and officials frequently came to the Probation Office to speak with Ms. Jakalski. When they asked Mr. Dunnam where Ms. Jakalski was, he typically asked the Probation Department Office Manager, Rebekah Cothran ("Ms. Cothran"), if she knew about Ms. Jakalski's whereabouts.

3

21. Because Mr. Dunnam and Ms. Jakalski began working for Wilson County at around the same time, they each accrued vacation and sick time at approximately the same rate.

22. Based on Mr. Dunnam's own accrual and use of sick time and vacation time, he knew Ms. Jakalski could not possibly have enough vacation and/or sick time to cover her frequent absences.

23. During her employment with Wilson County, Ms. Jakalski began a romantic relationship with a court security officer, James Flora ("Mr. Flora"). Mr. Flora also worked for Wilson County.

24. After Ms. Jakalski and Mr. Flora began their relationship, when Ms. Jakalski showed up to work, she frequently spent her time talking in hushed tones with Mr. Flora about personal matters instead of working.

25. Employees in the Probation Department document their time worked on paper timesheets; the timesheets are then scanned using a shared scanner. The scanned documents are automatically stored in a shared folder accessible by any Probation Department employee.

26. Ms. Jakalski frequently left her completed paper timesheets on her desk. Mr. Dunnam saw that Ms. Jakalski reported she worked eight hours each day—even when she arrived at the office late, left the office early, or never came to the office at all.

27. As a taxpaying citizen of Wilson County, Mr. Dunnam became extremely concerned about Ms. Jakalski's time theft, which was a substantial waste of taxpayer money.

28. As a government official, Ms. Jakalski's time theft was a matter of public concern.

29. Inaccurate reporting of hours is a violation of Tenn. Code Ann. § 39-16-504.

30. Time theft is not an unusual occurrence within the Wilson County government. In 2020, the Tennessee Comptroller of the Treasury issued a report finding that Wilson County's

4

Chief Judicial Commissioner, Randy Hankins, falsely reported 640 hours of time worked in 2018, equating $17,603.59 in received (but unearned) compensation.

31. The Tennessee Comptroller of the Treasury investigated Mr. Hankins' time theft after receiving reports of "suspected abuse of reported time worked," and sent the results of its investigation to the District Attorney General of the 15th Judicial District.

32. On or around July 10, 2023, Mr. Dunnam reported his concerns about Ms. Jakalski's time theft to Qiana Scruggs ("Ms. Scruggs"), Wilson County's HR Director.

33. Ms. Scruggs was outside Mr. Dunnam's chain of command.

34. At Ms. Scruggs' direction, Mr. Dunnam submitted a written complaint to Wilson County HR stating that "Ms. Jakalski takes time off work without using sick or annual leave . . . I have seen her come in late and take days off and not put it on her time sheet."

35. When Mr. Dunnam met with Ms. Scruggs, she told him to talk to Ms. Jakalski about his concerns. In response, Mr. Dunnam told Ms. Scruggs he was fearful of retaliation. Although Mr. Dunnam told Ms. Scruggs he feared retaliation, Ms. Scruggs did not direct Mr. Dunnam to file his complaint with any other individual either inside or outside the Wilson County government.

36. Mr. Dunnam's complaints were not made pursuant to his official responsibilities as a Probation Officer and making such complaints were not ordinarily within the scope of his duties as a Probation Officer.

37. Ms. Scruggs provided the information about Mr. Dunnam's complaint to the Wilson County Mayor, Randall Hutto ("Mayor Hutto").

38. Mayor Hutto and Wilson County HR met with Ms. Jakalski regarding Mr. Dunnam's complaint.

5

39. On or around September 28, 2023, Ms. Jakalski called Mr. Dunnam and asked for the password to his computer.

40. Ms. Jakalski claimed she needed the password so a new employee could use his computer for training.

41. Mr. Dunnam later learned this was false; Ms. Jakalski asked for his password to search the contents of his computer.

42. On or around September 29, 2023, Ms. Jakalski called Mr. Dunnam into a meeting with Ms. Jakalski and Ms. Scruggs.

43. At that meeting, Ms. Jakalski told Mr. Dunnam she found some unspecified "personal items" on his computer, as well as copies of several of her timesheets.

44. Any of Ms. Jakalski's timesheets on Mr. Dunnam's computer would have been rightfully accessed through the shared drive described above.

45. Ms. Jakalski did not search the computers of employees who did not complain about her time theft, nor did she try to determine if employees who did not complain about time theft had copies of documents from the shared drive on their computers.

46. During this meeting, Mr. Dunnam complained that Ms. Jakalski frequently used working time to engage in private conversation with Mr. Flora. These complaints were not made pursuant to Mr. Dunnam's official responsibilities as a Probation Officer and making such complaints were not ordinarily within the scope of his duties as a Probation Officer.

47. During this meeting, Mr. Dunnam complained that Ms. Jakalski was trying to "push[] [him] out."

48. Ms. Jakalski also chastised Mr. Dunnam for "asking about [her] whereabouts constantly." She then said that if she was missing from the office, he was not allowed to ask Ms. Cothran about her whereabouts.

49. Ms. Cothran, who also attended the meeting, told Mr. Dunnam his questions about Ms. Jakalski's whereabouts "puts her in a bad spot." Mr. Dunnam responded that the frequent questions about Ms. Jakalski's whereabouts from other Wilson County officials and employees "puts [him] in a bad spot too."

50. On October 1, 2023, Ms. Cothran texted Mr. Dunnam and told him Ms. Jakalski decided to place him on an "administrative leave" for the following workday (Monday, October 2, 2023).

51. On October 3, 2023, when Mr. Dunnam returned to work from the retaliatory "administrative leave," his key fob did not work; another employee let him into the building.

52. Prior to filing suit, the data from the key fobs for the building where the Probation Department was located was requested; Wilson County refused to provide the data.

53. When Mr. Dunnam arrived at the Probation Department office, Ms. Jakalski handed him a separation notice.

54. The separation notice was signed solely by Ms. Jakalski.

55. Wilson County gave Ms. Jakalski authority to make the retaliatory decisions above—*e.g.*, to place Mr. Dunnam on administrative leave and then terminate him.

56. Ms. Jakalski's personnel file contains documentation that Wilson County trained her on various subjects; however, none of the training documentation in Ms. Jakalski's personnel file relates to the laws prohibiting retaliation.

57. Because Wilson County gave Ms. Jakalski the authority to take tangible employment actions against its employees, there was an obvious need for Wilson County to train her on the laws prohibiting retaliation.

58. Despite the obvious need to train Ms. Jakalski regarding the laws prohibiting retaliation, it failed to do so.

### COUNT ONE: FIRST AMENDMENT RETALIATION
### IN VIOLATION OF 42 U.S.C. § 1983
*Against Wilson County, Tennessee*

59. Plaintiff incorporates Paragraphs 1 through 58 above as if each has been fully stated herein.

60. Plaintiff engaged in constitutionally protected speech when he complained about Ms. Jakalski's falsification of time records.

61. Plaintiff engaged in constitutionally protected speech when he complained about Ms. Jakalski's use of working hours to talk to her paramour instead of doing the work that Wilson County paid her to perform.

62. Plaintiff's speech was on a matter of public concern, as its content was related to misuse of government funds.

63. Plaintiff's speech was not pursuant to his official duties.

64. As a resident of Wilson County, Plaintiff's interest as a citizen in speaking on these matters and bringing Defendants' wrongdoing to light outweighed Wilson County's interest as an employer in promoting the efficiency of the public services they performed through its employees.

65. Ms. Jakalski, acting under color of state law, suspended and terminated Plaintiff because he exposed Ms. Jakalski's time theft.

66. The suspension and termination of Plaintiff would deter a person of ordinary firmness from engaging in constitutionally protected speech.

67. Wilson County retaliated against Plaintiff for exercising his First Amendment right to free speech.

68. Wilson County failed to adequately train Ms. Jakalski on the laws prohibiting retaliation.

69. As a result of these actions, Wilson County retaliated against Mr. Dunnam for exercising his First Amendment right to free speech in violation of 42 U.S.C. § 1983.

70. As a result of Wilson County's violations of § 1983, Mr. Dunnam is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

### COUNT TWO: FIRST AMENDMENT RETALIATION IN VIOLATION OF 42 U.S.C. § 1983
*Against Betsy Jakalski*

71. Plaintiff incorporates Paragraphs 1 through 70 above as if each has been fully stated herein.

72. Plaintiff engaged in constitutionally protected speech when he complained about Ms. Jakalski's falsification of time records.

73. Plaintiff engaged in constitutionally protected speech when he complained about Ms. Jakalski's use of working hours to talk to her paramour instead of doing the work that Wilson County paid her to perform.

74. When Ms. Jakalski forbade Plaintiff from discussing her whereabouts with Ms. Cothran, she created a prior restraint on Plaintiff's ability to engage in free speech about matters of public concern.

75. Plaintiff's speech was on a matter of public concern, as its content was related to misuse of government funds.

76. Plaintiff's speech was not pursuant to his official duties.

77. As a resident of Wilson County, Plaintiff's interest as a citizen in speaking on these matters and bringing Ms. Jakalski's wrongdoing to light outweighed Wilson County's interest as an employer in promoting the efficiency of the public services they performed through its employees.

78. Ms. Jakalski, acting under color of state law, suspended and terminated Plaintiff because he exposed Ms. Jakalski's time theft.

79. Plaintiff's suspension and termination would deter a person of ordinary firmness from engaging in constitutionally protected speech.

80. Ms. Jakalski retaliated against Plaintiff for exercising his First Amendment right to free speech.

81. Mr. Dunnam had a clearly established right to exercise his free speech rights without retaliation, and a reasonable officer in Ms. Jakalski's position would have known that this retaliation would violate clearly established law.

82. As a result of these actions, Ms. Jakalski retaliated against Mr. Dunnam for exercising his First Amendment right to free speech in violation of 42 U.S.C. § 1983.

83. As a result of Ms. Jakalski's violations of § 1983, Mr. Dunnam is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

# COUNT THREE: RETALIATION IN VIOLATION OF THE PUBLIC EMPLOYEE POLITICAL FREEDOM ACT, TENN. CODE ANN. § 8-50-601, *et seq.*
*Against Wilson County, Tennessee*

84. Plaintiff incorporates Paragraphs 1 through 83 above as if each has been fully stated herein.

85. Mr. Dunnam complained about Ms. Jakalski's time theft to Ms. Scruggs, who communicated Mr. Dunnam's complaints to Mayor Hutto.

86. Mayor Hutto is an elected official.

87. After Mayor Hutto met with Ms. Jakalski regarding her time theft, Wilson County terminated Plaintiff.

88. Wilson County suspended and terminated Plaintiff because Plaintiff complained about Ms. Jakalski's time theft, and those complaints were escalated to Mayor Hutto, who read and knew about Plaintiff's complaints.

89. Plaintiff's complaints about Ms. Jakalski's time theft (which were ultimately communicated to Mayor Hutto) were a substantial or motivating factor in Wilson County's decision to suspend and terminate Plaintiff.

90. As a result of these acts, Wilson County violated the Public Employee Political Freedom Act, Tenn. Code Ann. § 8-50-601, *et seq*.

91. As a result of Wilson County's violations of the Public Employee Political Freedom Act, Mr. Dunnam is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, other equitable relief, and reasonable costs and attorney's fees.

# COUNT FOUR: RETALIATION IN VIOLATION OF THE TENNESSEE PUBLIC PROTECTION ACT, TENN. CODE ANN. § 50-1-304
*Against Wilson County, Tennessee*

92. Plaintiff incorporates Paragraphs 1 through 91 above as if each has been fully stated herein.

93. Mr. Dunnam was Wilson County's "employee" under the Tennessee Public Protection Act.

94. Wilson County is an "employer" under the Tennessee Public Protection Act.

95. As set forth above, Mr. Dunnam refused to participate in, or remain silent about, illegal activities while employed by Wilson County.

96. After engaging in protected activity under the Tennessee Public Protection Act, Wilson County terminated Mr. Dunnam.

97. Wilson County terminated Mr. Dunnam because he engaged in protected activity under the Tennessee Public Protection Act.

98. As a result of these acts, Wilson County violated the Tennessee Public Protection Act, Tennessee Code Annotated section 50-1-304.

99. As a result of Wilson County's violations of the Tennessee Public Protection Act, Mr. Dunnam is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, other equitable relief, and reasonable costs and attorney's fees.

## **RELIEF REQUESTED**

1. A jury to try his claims.

2. Entry of judgment in favor of Plaintiff, and against Defendants, for compensatory damages in an amount to be proven at trial.

3. Entry of judgment in favor of Plaintiff for back pay, front pay, and other equitable relief.

4. An award of Plaintiff's costs, reasonable attorney's fees, and pre- and post-judgment interest.

5. Any other legal or equitable relief to which Plaintiff may be entitled.

Dated: February 29, 2024

Respectfully submitted,

/s/ *Jerry Gonzalez by JFH w/ permission*
Jerry Gonzalez, BPR No. 018379
P.O. Box 456
Rockvale, Tennessee 37153
(615) 360-6060
jgonzalez@jglaw.net

/s/ *Jesse Ford Harbison*
Jesse Ford Harbison, BPR No. 032105
P.O. Box 68251
Nashville, Tennessee 37206
(629) 201-7284
jesse@jesseharbisonlaw.com

*Attorneys for Plaintiff Casey Dunnam*